# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

BRENT M. BARBER,                           *
Reg. # 17455-045                           *
                                           *
                    Plaintiff,             *
vs.                                        *          No. 2:09-cv-00009-SWW-JJV
                                           *
U.S.A.; *et al.,*                          *
                                           *
                    Defendants.            *

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.  The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.   PROCEDURAL HISTORY

Plaintiff filed a *pro se* complaint on January 26, 2009, pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[1]  Plaintiff has alleged that prison officials unfairly punished him for possessing contraband because he was working undercover with prison officials to identify individuals smuggling contraband into the prison.  He further alleges that prison officials failed to protect him from harm when his cooperation with prison authorities became known.

The Court previously denied a summary judgment motion filed by Defendants (Doc. Nos. 40 & 45).  Plaintiff made a timely demand for a jury trial and the Court held a pre-jury evidentiary hearing on April 13, 2010.  Pursuant to the standard set forth in *Johnson v. Bi-State Justice Center*,

---

[1] "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).  The United States Court of Appeals for the Eighth Circuit has stated that "[t]his court has referred to a *Bivens* action as 'the federal law analogous to § 1983.'" *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995) (citations omitted).  "[A]n action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Id*. (citation omitted).

12 F.3d 1133 (8th Cir. 1993), the Court considered Plaintiff's testimony during the hearing to be true, drew appropriate inferences in Plaintiff's favor, and refrained from making any credibility determinations. *Id.* at 1135-36. Viewing the evidence presented during the hearing in this light, the Court must now decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 251, 252 (1986)).

After careful review, the Court recommends that Plaintiff's claims under the Federal Tort Claims Act and for deliberate indifference to serious medical needs be dismissed for failure to exhaust administrative remedies. The Court further recommends that Plaintiff's due process claims be dismissed, pursuant to the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and that the remainder of Plaintiff's claims related to his disciplinary conviction be dismissed for failure to state a claim.

## II.    FACTS

Plaintiff is a federal inmate serving time for mail and wire fraud, money laundering, and conspiracy convictions in 2006 from the United States District Court for the Western District of Missouri. BOP officials designated Plaintiff to a low-security satellite camp at the Federal Correctional Complex in Forrest City, Arkansas. Plaintiff testified he had been there for about six months when another inmate approached him and claimed to be assisting officials within the prison. This inmate told Barber that if he participated in this operation, Plaintiff might obtain a sentence reduction for his efforts. The inmate further told Barber he could confirm this information by contacting a Special Investigative Supervisor (SIS) at the unit. Barber then asked his Unit Manager, Ms. Kimble, to put him in touch with Lt. Thomas, the SIS. Believing he was doing so at the behest of the DEA and prison officials, Plaintiff arranged with the smugglers and received marijuana and

a cellular telephone.

Barber then contacted DEA Agent Case by telephone.  Based on his conversations with Agent Case, Barber believed that the DEA was interested in his assistance.  Plaintiff then went to Lt. Thomas to update him on his efforts.  At this meeting, Lt. Thomas informed Barber that he was required to turn over the contraband.  Plaintiff returned to his cell with the intention of moving the contraband to a trash can for Thomas to retrieve, but was unable to do so.  Barber then tried to contact Lt. Thomas both by phone and through the prison mail system, but was unable to reach Thomas or his case manager, Mr. Rendon.  On the evening of September 13, 2007, two officers placed Plaintiff in handcuffs and took him to the Special Housing Unit (SHU).  Barber stayed in the SHU a week before Lt. Thomas responded to Plaintiff's requests and came to visit him.

Lt. Thomas then questioned Plaintiff as to the location of the cell phone, which had not been found.  Plaintiff reported it had been hidden in his laundry bag but guessed it had likely been stolen when his belongings were searched and inventoried for removal.  However, Plaintiff had removed the subscriber identity module (SIM card) from the phone and told Lt. Thomas where it was located.  After this meeting, Barber's requests for additional meetings were ignored.  The SIM card was found on October 2, 2007.

On October 24, 2007, prison officials delivered an incident report to Plaintiff charging him with a disciplinary violation for possessing contraband in the prison.  Officials conducted the disciplinary hearing on February 7, 2009.  Plaintiff testified he was not given advance notification or adequate time to prepare for the hearing, but he did submit an 18-page summary outlining his version of events.  Plaintiff admitted to possessing the cell phone and the Discipline Hearing Officer (DHO) found him guilty of possessing a "hazardous tool."  The DHO sentenced Barber to a suspended sentence of 60 days of disciplinary segregation (pending the completion of 180 days of

clear conduct); the loss of 27 days of good-time credit; and 90 days of restricted phone privileges.

Plaintiff also testified that during his time in the SHU, he did not receive his medications for depression and other chronic illnesses.  He described the conditions in SHU as somewhat more restrictive than those for the general population at the satellite camp, with limitations on personal property, phone use, library access, commissary purchases, and out-of-cell recreation time. Moreover, shortly after his disciplinary conviction he was removed from the satellite camp to FCI-Forrest City Low, where other inmates were apparently aware of his desire to assist prison authorities with smugglers.  One night while he was sleeping in his bunk, Plaintiff was brutally attacked by another inmate or inmates and as a result suffered broken facial bones, a concussion, and various other injuries.

## III.   ANALYSIS

### A.   Defendants' Motion to Dismiss Complaint for Failure to Exhaust Administrative Remedies.

Defendants have renewed the argument in their summary judgment motion – that Plaintiff has failed to exhaust his administrative remedies.[2]  This Court denied the motion because questions

---

[2] Section 1997e(a), which was enacted in 1996 as part of the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997 *et seq.* , provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.*  This statute requires that prisoners exhaust all available administrative remedies before they can bring a civil rights action based on conditions of imprisonment.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002)("Thus federal prisoners suing under *Bivens*, must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.").  A prisoner must exhaust his administrative remedies before bringing a federal civil rights action, regardless of the nature of his claim or the relief he is seeking. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

still existed about whether Plaintiff had exhausted some of his claims.  Defendants rely largely upon an affidavit executed by An Tran, an Attorney Advisor for the Federal Bureau of Prisons.  Tran reviewed the prison's grievance records and concluded that Plaintiff failed to exhaust administrative remedies as to his pending amended complaint.

Defendants argue that, because Plaintiff failed to fully exhaust all of the claims in his complaint, this Court is without subject matter jurisdiction and therefore this cause of action should be dismissed.  Defendants' total exhaustion argument is incorrect.  *Jones v. Bock*, 549 U.S. 199 (2007).  Failure to exhaust the available administrative remedies is an affirmative defense, but not a matter of jurisdiction as they argue. *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. at 215-16).  Plaintiff's failure to administratively exhaust every claim in his complaint is not fatal to his entire case.  Instead, this Court will allow Plaintiff to proceed with those claims that were properly exhausted and dismiss without prejudice those that were not.  *Id.* at 219-24.  As the United States Supreme Court has directed, when "a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Id. at 221.*

While Defendants' motion is incorrect as to the overall result, their point on exhaustion is well taken; some of Plaintiff's claims have clearly not been properly exhausted and must be dismissed on this basis.  However, the Court finds that Defendants' motion to dismiss the entire complaint must be denied.[3]

---

[3]As a point of instruction, the Court finds the Defendants' reliance on the affidavit of An Tran to be somewhat misplaced.  They should continue to rely upon Ms. Tran's affidavit to identify which claims have been through the administrative process.  However, submission of Ms. Tran's interpretation of those claims goes well beyond the scope of her role.  For example, Ms. Tran's statement that, "the crux of his complaint is based on his belief that he got a bummed [*sic*] deal and staff did not honor the agreement they allegedly made with him in exchange for his alleged assistance in a so-called sting operation" (Tran Decl. ¶ 10), is a conclusory argument and not within the scope of her role as a fact witness.  Furthermore, the Court disagrees with the Defendants' and Tran's conclusions and finds that Barber has in fact exhausted some of his claims.

**B.     Plaintiff's Failure to Exhaust Federal Tort Claims Act and Deliberate Indifference Claims.**

The Prison Litigation Reform Act requires proper exhaustion which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81 (2006).  In other words, proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Id*. at 90 (other quotation and marks omitted).  The question of whether proper exhaustion has been achieved turns on the specifics of the prison policy.  *Jones v. Bock*, *supra*.

The Court discussed this requirement with Plaintiff at the pre-jury hearing.  Prisoners may perceive the exhaustion requirement as some unfairly technical "gotcha" game played by prison officials to keep prisoners out of court.  To the contrary, the exhaustion requirement plays a critical role in the reform process.  The United States Court of Appeals for the Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones*, 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the

agency's] procedures.'") (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)); *Alexander v. Hawk*, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)) ("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court'").

The BOP provides a comprehensive administrative remedy procedure for federal inmates seeking to address grievances relating to their confinement. Under the Administrative Remedy Program, the inmate must first present his concern informally to an appropriate staff member, who must attempt to resolve the concern. *See* 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, within "20 calendar days following the date on which the basis for the Request occurred," the inmate must file an Administrative Remedy Request by submitting a BP-9 form to the staff member designated by the BOP, generally the warden. *See* 28 C.F.R. §§ 542.14(a), (c)(4). If dissatisfied with the warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form within 20 days of the date the warden signs the response. See 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the inmate must file an appeal with the Office of General Counsel by submitting a BP-11 form within 30 days of the Regional Director's response. *Id.* An exception exists for appeal of disciplinary actions, which may be directly appealed to the Regional Director – and appears to be the case in the instant action. Those remedies need not first be presented at the local or institutional level where the disciplinary action was taken. Those claims which the Court finds to be subject to dismissal for failure to exhaust administrative remedies will be addressed in turn.

### 1.    Federal Tort Claims Act Claim

The Federal Tort Claims Act ("FTCA") gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  The FTCA provides that an "action shall not be instituted upon a claim against the United States for money damages" unless the claimant has first exhausted his administrative remedies.  28 U.S.C. § 2675(a).  The exhaustion of administrative remedies is complete once a claimant has presented the claim to the appropriate federal agency and his claim has been finally denied by the agency in writing and sent by certified or registered mail. *Id.*

Plaintiff admittedly has failed to pursue, let alone exhaust, any administrative remedies for the negligence claim he asserts under the FTCA.   Plaintiff has not filed any claim for damages with the BOP,  and has thus deprived the agency of an opportunity to settle the dispute.  Therefore, the Court recommends this claim be dismissed without prejudice for failure to exhaust administrative remedies.

### 2.    Deliberate Indifference To Plaintiff's Serious Medical Needs

Plaintiff asserts two claims of deliberate indifference to his serious medical needs.  The first concerns the failure of Defendants to provide Plaintiff with his necessary and prescribed medications while he was in SHU.  Plaintiff testified that during his time in segregation, he missed approximately 200 doses of his antidepressant alone.   His second claim alleges the BOP officials failed to adequately treat him following the assault.  In the appeal of his disciplinary conviction, Remedy No.

488584, Plaintiff did not assert either of these claims. Accordingly, the Court recommends these claims be dismissed without prejudice for failure to exhaust administrative remedies.

### C.    Plaintiff's Remaining Claims

#### 1.    Failure to Protect Claim

Plaintiff has alleged the Defendants failed to protect him by moving him to a more dangerous facility, where it was likely known that he had cooperated with prison officials to identify those smuggling contraband into the prison. Defendants' failure to protect him resulted in an assault by other inmates. The United States Court of Appeals for the Eighth Circuit has summarized the Eighth Amendment protections as follows:

> The Eighth Amendment prohibits the government from engaging in cruel and unusual punishment, which requires that prison officials take reasonable measures to protect inmates from violence from other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). While inmates have an Eighth Amendment "right to be protected from harm by fellow inmates . . . , prison officials violate this right only when they exhibit a 'deliberate or callous indifference' to an inmate's safety." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (quoting *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (internal citations omitted)). In a prisoner Eighth Amendment claim, the "prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving* [*v. Dormire*], 519 F.3d [441] at 446 [(8th Cir. 2008)] (quoting *Farmer*, 511 U.S. at 834) (internal citation omitted). In a claim involving an assault by one inmate on another, the subjective component asks whether the prison official was deliberately indifferent to a serious risk of an attack on the inmate. *Id*. The subjective component requires that the official was both "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also draw the inference.'" *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003) (quoting *Farmer*, 511 U.S. at 837). Negligence on the part of the prison official is insufficient to satisfy the subjective component; the official must recklessly disregard a known, excessive risk of serious harm to the inmate. *Id.*

*Norman v. Schuetzle*, 585 F. 3d 1097, 1103 (8th Cir. 2009).

Giving Plaintiff all benefit of any doubt, the facts presented fail to show any of the Defendants knew or should have known of any potential risk of harm to Plaintiff.  The subjective component of the qualified immunity inquiry requires that the official "knew of and disregarded an excessive risk to" the inmate's safety.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).  Here, Plaintiff has presented no evidence that any prison official knew of any risk to Plaintiff.  While "a factfinder may conclude that a prison official knew of a substantial risk from the fact that the risk was obvious,'" *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 842), the subjective requirement makes it necessary for the prison official to actually know of that specific risk of harm.  *See Pagels*, *supra* at 740.  In other words, a prison official cannot be held liable for a prisoner attack unless he was subjectively aware of the risk and recklessly ignored it.  *See Farmer*, 511 U.S. at 841-42 (rejecting argument asking Court to find reasonable prison official standard rather than the actual knowledge requirement).

Construing Plaintiff's pleadings as broadly as possible, and drawing all inferences in favor of the Plaintiff, the Court finds, as a matter of law, that there is no genuine issue of material fact on this point.  At best, Plaintiff's claim could only amount to negligence, which is not sufficient to carry forward his constitutional claim.  *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986).  Accordingly, the Court recommends this claim be dismissed with prejudice.

### 2.      Denial of Due Process Claim

#### a.      Claims Involving Restoration of Good Time Credits.

Plaintiff alleges he was denied "due process" in the conduct of his disciplinary hearing because he was not given mitigation for his alleged undercover work and not allowed to call Agent

Case as a witness in his defense.[4]  While Barber seeks compensatory and punitive damages for his due process claims, he also seeks "restor[ation] to Plaintiff [of] all good conduct time revoked and to forthwith restore his previous custodial and security classification." (Doc. No. 2 at 5)  Thus, the essence of Plaintiff's claims relate to the imposition of discipline that included loss of good time credits and his damage claim challenges harm caused by actions whose unlawfulness would render his disciplinary conviction and sentence invalid.  These claims should be dismissed because they are barred by three decisions of the United States Supreme Court – *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994); and *Edwards v. Balisok*, 520 U.S. 641 (1997).

*Preiser* involved a due process claim related to the conduct of prison disciplinary proceedings.  411 U.S. at 476.  The *Preiser* plaintiffs filed a civil rights action in which they sought the restoration of their good-time credit.  *Id*.  The Court concluded that the plaintiffs could not sustain a civil rights action because, "[e]ven if the restoration of [good-time credit] would not have resulted in [the plaintiffs'] immediate release, but only in shortening the length of their actual confinement in prison, *habeas corpus* would have been their appropriate remedy."  *Id*. at 487.  The Court made clear that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Id*. at 500.  In reaching this conclusion, the Court observed that plaintiffs "sought no damages, but only equitable relief – restoration of their good-time credits – and our holding . . . is limited to that situation."  *Id.* at 494.

The Supreme Court later expanded this holding to cases in which the prisoner seeks only

---

[4]Plaintiff raised the claim of not being allowed to call Agent Case in his defense for the first time at the pre-jury hearing.  Thus, this claim should also be dismissed for his failure to exhaust administrative remedies before initiating his civil action.

monetary damages.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  In *Heck*, the plaintiff was a

state prisoner who alleged that his constitutional rights had been violated during the course of the

criminal investigation and prosecution, which led to his conviction.  *Id*. at 479.  Unlike *Preiser*,

*Heck* sought damages rather than injunctive relief.  *Id*.  Nonetheless, the Court affirmed dismissal

of the plaintiff's action, finding that his claims effectively challenged the lawfulness of his

conviction and confinement.  *Id*. at 479-480, 483.

> We hold that, in order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983. Thus, when
> a state prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the invalidity
> of his conviction or sentence; if it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or sentence has already been
> invalidated.

*Id*. at 486-87 [internal footnote omitted].  As a result, "[e]ven a prisoner who has fully exhausted

available state remedies has no cause of action under § 1983 unless and until the conviction or

sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."

*Id*. at 489.

Finally, in  *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997),  the Court further expanded

its holding to cases in which a prisoner challenged the result of a disciplinary proceeding.  In

*Edwards*, the plaintiff had been found guilty of rule violations in a prison disciplinary proceeding

and his sentence included the forfeiture of good-time credit.  *Id.* at 643.  After exhausting his

administrative appeals, the plaintiff filed a civil rights action in which he "requested a declaration

that the procedures employed by state officials violated due process," as well as compensatory and

punitive damages, and injunctive relief.  *Id*.  His complaint specifically alleged that the prison

official, who had served as a hearing officer during the disciplinary proceeding, had "concealed

exculpatory witness statements and refused to ask specified questions of requested witnesses, . . .

which prevented [the plaintiff] from introducing extant exculpatory materials and 'intentionally

denied' him the right to present evidence in his defense. . . ."  *Id*. at 644.  The United States Supreme

Court concluded that the plaintiff's civil rights claims were barred by *Heck*, because "[t]he principal

procedural defect complained of"– that the plaintiff was denied the opportunity to present a defense,

owing to the "deceit and bias of the hearing officer"– "would, if established, necessarily imply the

invalidity of the deprivation of his good-time credits."  *Id*. at 646.  As a result, the Court held that

the plaintiff's "claim for declaratory relief and money damages, based on allegations of deceit and

bias on the part of the decision maker that necessarily imply the invalidity of the punishment

imposed, is not cognizable under § 1983."  *Id*. at 648.

The United States Court of Appeals for the Eighth Circuit further explained these United

States Supreme Court holdings in *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002).  There, the

plaintiff was found guilty in a prison disciplinary proceeding, and sentenced to 30 days in

segregation, plus the forfeiture of 45 days of good-time credit.  *Id*. at 1064.  The prisoner filed a civil

rights action claiming that prison officials had violated his constitutional rights to due process and

equal protection during the course of his disciplinary proceeding.  As relief, the plaintiff sought an

"expung[ement] of the disciplinary conviction, restoration of his good-time credits and all other

privileges, suspension of his administrative segregation classification . . . and money damages."  *Id*.

at 1064-1065.  The court concluded that plaintiff's claim seeking restoration of his good-time credit

was properly dismissed.  *Id*. at 1066. The court further affirmed the dismissal of plaintiff's claims

for money damages, observing that:

14

> Under *Heck*, "we disregard the form of relief sought and instead look to the essence of the plaintiff's claims." *Sheldon [v. Hundley]*, 83 F.3d [231] at 233 [8th Cir. 1996]. Because Portley-El seeks damages for the imposition of discipline that included the loss of good time credits, his damage claim challenges "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" and is *Heck*-barred.

*Id.* (citation omitted)

In *Portley-El*, the plaintiff had argued that *Heck* did not apply to his equal protection claim, "because equal protection focuses on discriminatory treatment, not on the process due in prison disciplinary proceedings." *Id.* However, the court rejected that distinction and explicitly held that "[t]he rule in *Heck* covers any § 1983 claim that would 'necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.'" *Id.* (quoting *Heck v. Humphrey, supra* at 486). The *Portley-El* court emphasized that "the relevant inquiry is not the constitutional underpinning of the inmate's § 1983 cause of action." *Id.* Instead, the court focused its inquiry on whether the plaintiff's claims, if proven, "would necessarily . . . render the disciplinary result invalid, including the loss of good time credits." *Id.* (citing *Edwards v. Balisok, supra* at 647).[5]

---

[5]In the cases cited *supra*, the plaintiffs were state prisoners, who sought relief pursuant to Title 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Sheldon v. Hundley*, 83 F.3d 231 (8th Cir. 1996); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). Here, by contrast, the Plaintiff is a federal prisoner, who seeks relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Nonetheless, "[a]n action under *Bivens* is almost identical to an action under § 1983," *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990), and, for present purposes, there is no meaningful distinction between the two forms of action. Indeed, federal courts have consistently applied the principles of *Heck*, and its progeny, in *Bivens* actions by federal prisoners. *See Washington v. Sorrows*, 107 F.3d 876, 1997 WL 71670 at *1 (8th Cir. 1997) [Table Disposition] ("Although *Heck* addressed an action brought under 42 U.S.C. § 1983, the Court's rationale did not rest on any consideration unique to section 1983, and *Bivens* is 'the federal law analogous to § 1983.'") (quoting *Vennes v. An Unknown Number of Unidentified Agents*, 26 F.3d 1448, 1452 (8th Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995)), and citing *Martin v. Sias*, 88 F.3d 774, 774 (9th Cir. 1996) (collecting cases). Thus, the principles discussed in *Heck*, and its progeny, are fully applicable to Plaintiff's *Bivens* action. *See Perez v. Sanders*, 2009 WL 1043975 at *3 (E.D. Ark. March 26, 2009) (applying the *Heck* rule to bar a federal prisoner's claim that his due process rights were violated during the course of a prison disciplinary proceeding, which resulted in the loss

Here, Plaintiff seeks a judgment which would invalidate the results of the disciplinary proceeding, restore his class status, and reinstate his good-time credit.  The claim is barred by the United States Supreme Court's decision in *Preiser,* which held that a habeas proceeding is the exclusive remedy for challenging the duration of a prison term.  *See also Portley-El v. Brill, supra* at 1066 ("[T]he Court held in *Preiser* that habeas corpus, not § 1983, is the exclusive federal remedy when a state prisoner seeks restoration of good time credits taken away by a prison disciplinary proceeding").

Even though the Plaintiff also seeks compensatory and punitive damages for the alleged violation of his due process rights, those claims are similarly  barred by *Heck* and *Edwards*.  Upon close review of Plaintiff's complaint, the Court concludes that any judgment in his favor on his due process/good-time credit claims would necessarily raise doubts about the validity of his current release date and the proper duration of his confinement.  *Sheldon v. Hundley, supra* at 233. As a result, Plaintiff's action is premature, because his civil rights claims will not arise, if at all, "until [he] has successfully challenged that discipline through habeas or some other proceeding."  *Portley-El v. Brill, supra* at 1066.

### b.       Claims Involving Unconstitutional Deprivation of Liberty.

Plaintiff has also alleged the Defendants intentionally deprived him of due process by placing him in the SHU, from September 13, 2007, to February 21, 2008, during the pendency of the investigation.  Plaintiff testified that in the SHU, the conditions were more restrictive than those for the general population at the satellite camp.  He experienced limitations on personal property, phone use, library access, commissary purchases, and out-of-cell recreation time.  Plaintiff reported he was not denied all privileges, rather his access to privileges was substantially limited.

of good-time credit).

The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law. Constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment. *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995)(citations omitted).

In order to maintain an actionable procedural due process claim, an inmate must show that he has been deprived of some constitutionally protected liberty or property interest. *See Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In prisoner cases, a constitutionally protected liberty interest will arise only when the prisoner can show that he has suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," as contemplated in *Sandin v. Conner, supra* at 484 (holding that disciplinary segregated confinement of an inmate falls within expected parameters of prison life, and does not represent an "atypical and significant hardship," which would create a protected liberty interest).

The United States Court of Appeals for the Eighth Circuit has interpreted *Sandin* as follows:

> *Sandin* concluded that the inmate had no liberty interest in avoiding the disciplinary confinement in issue in that case because that confinement did not present an atypical and significant deprivation in relation to the ordinary incidents of prison life. Therefore, the Due Process Clause is not implicated despite the mandatory nature of the rules relating to the imposition of disciplinary confinement. The Court stated that there are some deprivations, and not necessarily those so severe as to independently trigger due process protection, against which states could conceivably create a liberty interest. Those are deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences.

*Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000), (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))(in a case specifically

addressing the special housing units of the Bureau of Prison systems, the Second Circuit Court of Appeals noted that "detailed factual records" may be necessary to determine whether a SHU stay amounts to an atypical and severe hardship under *Sandin* within the range of 101 to 305 days, indicating that SHU sentences of fewer than 100 days are unlikely to be considered violative of *Sandin* absent specific allegations of significant hardship). *See e.g., Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (holding that denial of visitation, exercise privileges, and religious services during 37 day segregation was not an atypical, significant hardship, which would support the denial of a protected liberty interest, and stating that "[w]e have consistently held that demotion to segregation, even without cause, is not itself an atypical and significant hardship."); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment, and therefore, was not denied due process); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (prisoner has no liberty interest in avoiding segregation).

Upon review of Barber's conditions of confinement he described at the hearing, the Court finds these conditions do not amount to "atypical and significant hardships." While the privileges Plaintiff had experienced in general population were much more limited while in the SHU, he still had at least some access to the same privileges. Albeit on a very limited basis, Plaintiff could still use the telephones and libraries, and could still take advantage of limited commissary privileges and out-of-cell time.

Additionally, the evidence presented at the pre-jury hearing showed that much of Plaintiff's time spent in the SHU was for administrative and not punitive purposes. Prison officials placed Barber in administrative segregation during the pendency of his investigation and, at that time, his placement was not instituted as punishment. Both sides agree that the conditions in administrative

18

segregation are less restrictive than disciplinary segregation.

As discussed with Plaintiff at the pre-jury hearing, the Court agrees that losing any privilege is surely a hardship to a prisoner.  However, under the law, these conditions do not amount to atypical and significant hardships in relation to the ordinary incidents of prison life.  Therefore, Plaintiff's claims in this regard should be dismissed with prejudice.

### 3.    False or Retaliatory Discipline Claim

The Court has attempted to broadly and liberally construe Plaintiff's complaint to properly frame his issues as constitutional claims.  The Court has framed his alleged role in assisting prison officials in an undercover capacity as a claim that Plaintiff was subjected to false or retaliatory discipline as a result of his undercover activities.  At the pre-jury hearing, Plaintiff did not disagree with this assessment.  Nevertheless, Plaintiff's facts, both in his complaint and through his testimony at the pre-jury hearing, fail to support a claim of unlawful retaliation by any of the Defendants.[6]

As a matter of law, Plaintiff's contention that he was wrongfully disciplined cannot support his retaliation claim.  "If the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prison rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), *cert. denied,* 515 U.S. 1145 (1995)(citing *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993), *cert. denied*, 512 U.S. 1209 (1994)); *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990)(no retaliation claim can be stated when alleged retaliation arises from actual violation of prison

---

[6]Plaintiff's false or retaliatory discipline claim would also be barred by *Heck* for the same reasons recited above.  In sum, it appears that Plaintiff's claims are barred by the Supreme Court's decision in *Heck* and its progeny, unless and until Plaintiff's good-time credit is restored by some other means, such as a successful *habeas* petition, pursuant to Title 28 U.S.C. § 2241. For this reason, Plaintiff's claim should be dismissed, pursuant to Title 28 U.S.C. § 1915A(b), Title 42 U.S.C. § 1997e(c)(1), and Title 28 U.S.C. § 1915(e)(2)(B)(ii), but without prejudice. *See Sheldon v. Hundley*, supra at 233.

regulations)); *See also Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

There is no dispute that Barber violated prison rules by possessing a cellular telephone. Plaintiff does not dispute that he possessed the phone. This is a violation of Bureau of Prison rules: Code 108, Possession, Introduction, Manufacture or Introduction of a Hazardous Tool; and Code 297, Use of the Telephone for Abuses other than Criminal Activity. While Barber admits he violated the rule and realizes he failed to properly coordinate with prison officials, he nevertheless seeks mitigation because he claims he possessed the phone while trying to help authorities identify smugglers bringing contraband into the prison.[7] Plaintiff's claim seeking mitigation is simply not a cognizable § 1983 constitutional claim. As the United States Court of Appeals for the Eighth Circuit has stated:

> While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform. Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance.

*Orebaugh*, 911 F.2d at 528.

Regardless of the "mitigating" circumstances that Plaintiff asserts to excuse his activity, the fact remains that Plaintiff was not entitled to possess or use a cell phone while in custody of the BOP and his retaliation claim must fail.

## III.   CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1.      Plaintiff's Federal Tort Claims Act and his deliberate indifference to his serious medical needs claims should be DISMISSED without prejudice for failure to exhaust administrative

---

[7]The Court recognizes that Defendants vehemently deny Barber was working for them in any undercover capacity.

remedies;

2.      Plaintiff's claim of failure to protect should be DISMISSED with prejudice as there is no genuine issue of material fact on this point;

3.      Plaintiff's denial of due process claims in the conduct of his disciplinary hearing should be DISMISSED without prejudice;

4.      Plaintiff's claim of denial of due process for placement in the Special Housing Unit for approximately six months pending a disciplinary hearing should be DISMISSED with prejudice;

5.      Plaintiff's claim of retaliatory discipline should be DISMISSED without prejudice; and

6.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 21st day of April, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE